Good morning, and may it please the Court. My name is Michael Morley, and together with co-counsel Dan Backer, we represent the appellants in this case. I would like to reserve six minutes for rebuttal, please. This case is about the internally inconsistent, incoherent restrictions on First Amendment activities that govern political contributions from PACs that have received at least 50 contributions and have contributed to at least five federal candidates. I'll begin with a quick overview. On the one hand, the FEC argues that new groups which have been registered for less than six months aren't trustworthy. They need to prove that they're not shams, and so Congress may impose a six-month waiting period before they can contribute the full statutory amount of $5,000 per election to a candidate. On the other hand, the FEC argues that once a group hits that six-month mark, the amount it can contribute to local, state, and national political parties gets slashed in half. The Supreme Court tells us that fighting actual or apparent corruption is the only constitutionally valid reason why the government can limit campaign contributions. At an absolute minimum, under heightened what the Supreme Court has called exact... Do you attack each provision independently or just the inconsistency between them so that then one would have to fall? Our equal protection claims attack the inconsistency, Your Honor, with regard to... The inconsistency between the two provisions or the inconsistency in the treatment of different types of PACs? The inconsistency in the treatment of different but substantially identical types of PACs, Your Honor. That would seem to me to make an independent challenge to each provision. Yes, Your Honor. But the inconsistency would just challenge one of the provisions, wouldn't it? Well, the equal protection claim brought by the new PACs is that it violates equal protection to allow them to contribute only $2,700 per candidate, whereas a PAC that has the same number of contributors, has made the same number of contributions, meets all of the other requirements for being a multi-candidate PAC, but has been registered for more than six months, gets to contribute twice as much. But that's the equal protection challenge to the limitation of contributions on the six-month PACs. Yes, Your Honor. That's the new PACs. But that doesn't have anything to do with inconsistency, does it? I thought the inconsistency was how the two different provisions as to what they could contribute. I thought that was the inconsistency that you thought wasn't tied to any purpose. Absolutely, Your Honor, because when you look at the established PACs claim, that when they hit the six-month mark. But before you get in, I'm just asking, are you making an independent claim that there should be no six-month limitations, no limitations on the six-month PAC at all, or are you making a claim that it's inconsistent to have that kind of limitation when contributions otherwise change if that six-month PAC is considered a problem? Which is it? Both, Your Honor. We argue that the FEC has failed to provide any record evidence whatsoever, as required by the Supreme Court's ruling in Nixon v. Shrink, Missouri, as required by NCPAC, National Conservative PAC. Is your problem with the time of six months, or is it with the concept of limitation of new PACs? It's, I don't, with the, I don't understand the second part. What if regulations didn't apply to PACs that were less than six months old? What if it was less than a week old? Well, from a First Amendment perspective, Your Honor, any waiting period for the exercise of First Amendment rights would be unconstitutional. If the FEC wanted to defend any waiting period, it would have to provide some evidence that PACs with a certain number of contributors, Could you use common sense? Could you say we don't want people to be able to form PACs 24 hours before an election and then give millions of dollars to a candidate? Because that is just so clearly, just on a common sense, tied to the possibility of corruption. Absolutely, Your Honor. And even under our view of the law, that would be absolutely prohibited. The amount, What would be prohibited? What Your Honor's hypothetical, where a person dumps a million dollars into a PAC and then it turns around and funnels it to a candidate. The amount that an individual may give to a PAC is capped. The amount that a cap may give, I know that, but you're missing the point of my question. My point of the question is, I'm trying to isolate if your concern is the six month period or any period, and if any waiting period can be linked by common sense to a desire to avoid corruption. Or by an election, an undue influence. That's my question. And as I had said before, Your Honor, we are making both arguments. On the one hand, Any waiting period at all is unconstitutional. On this record, yes, Your Honor, the FEC has provided no record evidence to suggest No, but I'm asking. I'm asking, could common sense provide such a rationale for regulation that says, My hypothetical is changing from six months to 12 hours. Does that stand under your view of the law? No, Your Honor, because again, to qualify for the increased limit in candidate contributions, you would still have to, the PAC would still have to have received contributions from 50 or more different people and would still have to have contributed to five or more different candidates. So if you have a PAC that meets those requirements, that's received over 50 contributions, that's contributed to more than five candidates, whether it's formed six months before an election, whether it's formed a week before an election. What about just the fact of checking the records? Wouldn't you want to give somebody the chance to check records? I mean, people can make up names. They do it occasionally, get prosecuted for it. But it seems to me some kind of time limitation would make sense and wouldn't be unconstitutional. But your position is absolutist. There could be no time limitation. Well, Your Honor, current law provides that as you get closer to an election, PACs have to make 24-hour and 48-hour disclosure requirements. So if you wanted to say that the PAC had to have made its contributions at least in enough time to make those records available, that would be a different case. Why would you allow for that limitation? Wouldn't that be a violation of free speech too? To the extent that it's a waiting period, it absolutely would. Not any waiting period, a period that you'd have to be formed in enough time to meet those requirements. I thought your argument would be that that would be unconstitutional as well. I believe that it is, Your Honor. I'm getting back to the question. You think there could be no time limitation in place on somebody to limit their contributions within any time frame before an election? You don't think there could be any requirements? That is one of our arguments, Your Honor. But you don't have to accept that in order to rule in our favor. Here, we're dealing with a six-month waiting period. And to go back to Your Honor's earlier point, at a minimum, at a bare minimum, the FEC can't have it both ways. The FEC can't – That's why I wanted to talk about that in a minute. But I'm prepared to let you – I'd rather you finish, if it suits you, your attack on just the six-month donation period. You understand what I'm talking about? Absolutely. I'm not comparing it to existing PACs. Absolutely, Your Honor. Nothing in the record suggests that the risk of corruption that a PAC poses changes at the six-month waiting period, and specifically with regard to the drop in limits that occurs at that six-month mark. Let me ask you this, though. I know that I'm asking questions. Others will, too. Do you allow that there can be any time limit that the FEC under the law can impose constitutionally on new PAC activity within some time frame of the election? I think that that would be a substantial burden on First Amendment rights, Your Honor. The Supreme Court – The answer would be there is none. There is – precedent suggests that waiting periods are unconstitutional, but you don't have to go that far to rule in our favor. I know, but I'm asking your view of it. Well, in Citizens United, the Supreme Court tells us an integral part of the Supreme Court's ruling is that it's the weeks before an election when people, the general public, are most likely to be interested, are most likely to get involved. So to say that at the very time when everybody is starting to pay attention and that the average citizen – Well, it's not hard to say that because if corruption is going to happen, it's likely to happen by any sophisticated person as close to the election as you can get it and still be effective, isn't it? I mean, corruption undetected before an election is likely to occur closer to the election, isn't it? Isn't it? That isn't – Why can't that be taken into account? That's one possibility, Your Honor. But again, we're dealing with contributions that are subject to limits. We're not talking about whether these PACs conform at the last minute and funnel millions of dollars to a candidate. The amount that a PAC is allowed, even under our view, the amount that a PAC can give to a candidate, even if this waiting period is thrown out the window, is still only $5,000. And the amount that the PAC can receive from any donor is still limited by federal law as well. So again, we're dealing with the groups that, under the terms of our as-applied challenge, have received contributions from more than 50 people. So it's not just a fly-by-night, one or two people getting together and conspiring. They've contributed to five or more candidates. And the record lacks any evidence to suggest that there is a risk of corruption, certainly at a six-month window, but even in the more limited windows, when again, that's exactly when the general public – You want to go to the argument about why the FEC's position is incorrect on the limitations amounts? Absolutely, Your Honor. With regard to the limits on established PACs, which say, after you've been in existence for six months, the amount you can contribute to political parties gets slashed in half. The district court itself, echoing Your Honor's thoughts, said that it's new grassroots organizations that are precisely the type of instruments that lend itself to a circumvention of contribution limits, and that the risk of circumvention is particularly great during the initial month of a PAC's creation. And the FEC spends the bulk of its brief, echoing Your Honor's points, saying we need to be suspicious of these new last-minute groups. The First Amendment, I argue, doesn't let us do that. It doesn't let us have – Are you conceding then there is a difference? They're not similarly situated, the new and the established? Well, both groups have received at least 50 contributions, have contributed to five or more – Are you conceding that they're not similarly situated? Absolutely not, Your Honor. Our argument, because we're arguing the district court in part was wrong, our argument is that there's no evidence to think that the risk of corruption is any greater with a group that's been registered for less than six months than for a group that's been registered more than six months. There's absolutely no record evidence to suggest that the risk of corruption is different. But even if this court disagreed, even if this court believed that we need to be, and the First Amendment lets us be suspicious of these new groups, well, then that eliminates any constitutional basis we have for slashing the contribution limits on the established groups, the groups that have been filing for six months, the groups that have a track record of performance, the groups where the FEC can investigate them if it wants to. These are the very groups. They're the opposite of what the FEC says we should be suspicious of, the opposite of what the district court says we should be suspicious of. There's no constitutional basis, certainly no anti-corruption rationale for reducing the amount that they can contribute simply because they've been around for six months. And in considering the tailoring of this law, I would ask this court to remember that if there is a group that's been registered for six months or more, but it's only received contributions from two or three people, and it's only contributed to one or two candidates, it gets to contribute that higher maximum amount to political parties. It gets to contribute that $33,000 to national parties, that $10,000 to state and local parties forever. So again, the very groups that we're suspicious of, groups that have only received contributions from a handful of people, groups that have only contributed to one or two candidates, they can make the statutory maximum contribution forever. And the groups that we have less reason to be suspicious of, that have the wide base of support, that have contributed to numerous candidates, those are the very groups that have their contribution limits on political party contributions slashed in half. So that the established PACs that meet the criteria, they can contribute less money during the period than the new six-month PAC? Yes, Your Honor. After a PAC has been registered with the FEC for six months, if it has received more than 50 contributions and it's contributed to more than five candidates, once it hits that six-month mark, the amount it can contribute to state, local, and national parties is it makes no sense at all to put a limitation on a six-month PAC when in fact you have doubts about the six-month PAC, but you allow them to contribute more to the political parties than you do to a PAC that's an established, more than six-month PAC. Exactly, Your Honor. At a minimum, the FEC can't have it both ways. Either the new groups pose a greater risk, the established groups pose a greater risk, but there's no anti-corruption rationale. Let me just ask this one question. I suspect they're going to suggest that it is an effort since they limit the six-month PAC on what they can give individuals that they still allow more, allow them to have involvement in the political process by upping what they can give to the party. Isn't that their rationale? So in other words, you're putting a limitation on for purposes of preventing corruption. This is their view. But we want to make it clear we're going to raise your other limits so you can still be actively involved in the election. Isn't that their rationale for it? Not exactly, Your Honor. The rationale that the FEC articulated at pages 55, 56, and 58 of their brief is that this disparity is necessary to help political party committees amass the resources and funds that they need for effective advocacy, which makes no sense when the whole point of the statute is that once groups that want to give money and funds to these political parties have been registered for six months, we slash the amount that they give. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Kevin Hancock for the Appellee Federal Election Commission. So I have a few preliminary arguments, but I do want to jump right into the substantive point that Your Honors were just discussing there. Those preliminary arguments would be very quickly, this case has already been decided two-thirds by Buckley v. Bolleo, the Supreme Court's Seminole campaign finance case, squarely rejected the first two of the three appellants' claims in this case. So your position is counts one and two have been decided by Buckley? Squarely decided by Buckley. The appellants engage in some efforts to try to distinguish Buckley, but those efforts are unsuccessful. They address the exact arguments raised as far as the six-month limit and its attached $2,700 contribution limit. Furthermore, there's no Article III jurisdiction in this case for a number of reasons. There are a number of problems with the PAC's claims to jurisdiction in this case. But just to jump ahead to the issue of the supposed inconsistency. One question on the mootness matter, though. Don't you acknowledge that it's most likely that no PAC, could ever meet the standard and overcome a mootness argument? Not at all, because they could bring a class action. That's the solution. But that's their solution. That's the solution. So even if the class representative's claim lapses and becomes moot and is not capable of repetition with regard to that same complaining party, there is always going to be members of the class whose claims don't repeat. The cases we've cited make that point. In fact, the confusion over the supposed election law exception to the mootness requirement, I think in part stems from that. Some of those older Supreme Court cases involved class actions where the Supreme Court said, okay, these cases are capable of repetition. Do you think the mootness is driven by logic or by precedent in this circuit? In other words, it makes sense to me somewhat that if there's a way to get around mootness to be white, to let an individual smut PAC challenge, because they've been affected. You say class actions. I don't know that any court I know of wants to encourage class actions, but at any rate, it seems to me there's a logical argument that you let a six-month committee that's been affected play out their rights. You're never going to get their rights played out in six months. Well, respectfully, Your Honor, I think there's also a very important reason to uphold the same complaining party requirement, because otherwise it's essentially an exercise in third-party standing. I mean, that PAC's rights won't be affected going forward at all, and so the litigating of the merits in that kind of situation would be nothing more than an advisory opinion, especially when there are ways, there are solutions to that issue that could be taken advantage of but have not in this case. Do any other circuits allow standing in a six-month case, even though the particular plaintiff isn't there? You know, I think I thought at first the Fourth Circuit Law, I tell you as I understand it, is capable of being repeated as to the plaintiff. I understood that to be the Fourth Circuit Law. I thought other circuits had said no. It's a little more lenient in the election context. You don't see the law that way. The Fifth Circuit explicitly applies this exception, and it did so in a case they cite that involves a similar provision, but it's distinguishable in very important ways. Well, that's why I asked you if your argument was driven by logic or if it was driven by precedent, because I think the precedent in this circuit appears to be capable of petition to the party. That's correct, and not only that, but this circuit applied the same complaining party requirement in two election law cases in the very recent past. Not only that, but the Supreme Court has done so just seven to eight years ago in the Davis case and the Wisconsin right-to-life case. That's why I say precedent, but it seems to me the Fifth Circuit may have a point, not that we can follow the Fifth Circuit, but that it does seem to me that the person who is injured should have a right to at least get a determination that has been injured, notwithstanding all the other complaint comments about mootness. And it just strikes me that there's something about that because this specific rule will never be adjudged as to that party. Well, because when you're dealing with an election law case, it's such a short period of time, and so it evades review. Election law cases very frequently evade review. I call that capable of repetition. I just didn't say but evading review. Correct, but it's our position that the separate requirement, the capable of repetition requirement, still should be upheld, especially in the election law context, especially when the appellants in this case had another avenue in which they could have preserved the Article III jurisdiction over this case. Which is? To bring a class action. Right. Not only that, but the two PAC plaintiffs, the new PACs, the six-month PACs, there isn't standing over their claims to begin with. And if somebody in a six-month situation brings a class action, the FEC is going to absolutely not argue against certification of class then. Well, of course I can't. Because that's how you want them to vindicate their right. Well, I can't promise that, Your Honor. I bet you can't. We would, of course, take a look at Rule 23 and see if it's satisfied. But in any event, that would be the avenue to follow. The FEC is proposing to us that people in this situation shouldn't try to say to us, we do have standing because the FEC thinks the proper avenue for a person in this situation, these plaintiffs, is to go by the route of a class action. I just want to be sure we understand that. If we see you again and you're arguing against a class action, we'll understand that actually you thought that was the way they should go. The only thing I would change about that, Your Honor, is that the courts think that. And we think respectfully that's the way it should follow. Well, I want to talk about what the FEC thinks. You're not there representing the courts. You're there representing the FEC, I think. I understand, Your Honor, of course. And you're the one that just proposed go class action. Well, I can't promise that we would argue that class certification would be qualified in every single case that could possibly be. But, you know, further adding to their jurisdictional problems, there was no standing at the outset for STOP PAC, one of the six-month PACs that asserts the first two claims. They caused their own injury. They could have registered in time to make the elevated $5,000. I have to admit, though, that the statute in part contributed to the injury. Well, the record evidence shows that they thought of this PAC seven months out, and then they waited to register it. But the six-month limit still applied to them. Of course. But the first election for which they wanted to contribute at the elevated $5,000 amount instead of the $2,600 then that applied was in mid-June. And they knew about this PAC they wanted to start in November. And so if they just filed a piece of paper that day in November, they could have engaged in the contributions they wanted to. Instead, they waited. It's a situation analogous to the Rosario case that we cite in our briefs. What about count three, though? Sure, Your Honor. So the problem with Appellant's argument on count three and the reason why there is no inconsistency is they very narrowly focus on the corruption interest in terms of what Congress was thinking when it sets the contribution limits. And not only that, but they just look at the corruption risk of the recipient. So with the party contribution limits, we're also thinking about a different recipient. It's not candidates. It's political parties. And so Congress has been very interested in making sure the political parties have enough money, enough ability to amass resources. Why do you think that is? Why do you think members of Congress want to be sure that political parties get enough money? Well, at least in 2002 with the passing of the McCain-Feingold Law. It might be because they're members of those political parties. I think it might have something to do with it. Well, it might, but there's nothing in the legislative history that indicates that. Because I probably except for Bernie Sanders and he caucuses with one of the established parties. Everybody else I don't know. There may be members in the House, but they're all in one of the two established political parties that want that PAC money. And you do make that statement about the purpose of it is to be sure the parties have the money that they need. That's something we should really be interested in? Well, here's why it was legitimate for Congress to be interested in that. So the appellants misrepresent that the only thing Congress can think about when setting the amounts of contribution limits is the corruption potential of the donor. So when Congress enacts a contribution limit, when it decides we need to limit one type of contribution, the Supreme Court has been clear there has to be an anti-corruption interest to justify the existence of that limit. But the Supreme Court in Buckley was equally clear that once Congress has decided that some limit is necessary, the courts have no scalpel to probe the precise amount of that contribution limit. And when it comes to setting that contribution limit, Congress is entitled to consider a number of factors, one of which includes the corruption risk of the donor. The other thing that Congress is constitutionally required to consider is whether the recipients of those contributions still have the ability to amass the funds necessary for effective advocacy. That's the Randall v. Sorrell case, and in Buckley the Supreme Court made that point as well. If contribution limits are too low and they restrict the amount of money flowing into the recipient, then that could affect the First Amendment speech rights of that recipient. So there's a balance when setting a contribution limit. But that balance looks inconsistent here, doesn't it? That you're concerned about the six-month PACs, but yet their contributions to the parties greater than the contribution allowed of established PACs. It looks inconsistent to me. Maybe you can justify it, but it seems inconsistent. Well, here's the justification. So does it look inconsistent to you? It doesn't. It may at face value look inconsistent, but here's the explanation. The corruption risk of those six months. By the way, I think it would look inconsistent as to the numbers, and maybe there's some justification for that, but I'll let you answer that. The corruption risk with the new PACs, the unestablished PACs, is particular to candidate contributions. So the Supreme Court in McCutcheon recently said that the risk of corruption is at its height when one makes a contribution to a candidate. Furthermore, the circumvention risk that we've described in our briefs for these six-month PACs, the danger is that you'll have people associated with one candidate, like what happened with the PACs in this case, and the evidence we've provided shows that. You'll have supporters of one particular candidate that go and say, okay, we're not happy with our individual $2,600 contribution limit. Let's set up a PAC. We can label ourselves a committee and therefore circumvent that lower contribution to candidates, and then we can give our preferred candidate $5,000. That risk does not also exist with regard to political parties. So those new PACs, the danger is that they're single-candidate focused, not multi-candidate. But why doesn't that first risk apply to six-month and non-six-month PACs? That first risk, whatever you just said, why couldn't the new PACs and the old PACs do exactly the same thing? Well, there could be some danger that an older PAC might do the same thing, but Congress reasonably drew a line at six months based upon two factors. So, one, this six-month period promotes the interest in disclosure. And so the longest a new PAC can go without disclosing under FEC law is six months. And so the period of time is the same. And so the period of time ensures that there would be no PAC that graduates to multi-candidate PAC status and gets that $5,000 limit that could give that heightened amount without having disclosed some information publicly to the FEC that would be then available to the public about where it gets its money and who it's giving its money to and who founded this PAC. So that's part one about why. But you just said that the justification was you didn't want a PAC doing what you said of circumventing the individual contribution by creating a PAC. Wasn't that the same concern for outside six months as inside six months? Because it's more likely that a PAC that is... Based on what is it more likely? Just... Just what? So it's more likely to have more donors. It's more likely to have contributed to more candidates. It will have certainly disclosed information to the FEC because it's required to by law. It will be more of a known entity the older it is. And sure, one year... It strikes me the only thing that may be true about that is it may be known by the filing. None of the rest of the stuff is not obvious to me. It's not obvious to me at all because maybe that's exactly why it's being formed. So it's not obvious to me that the rest of that rationale applies. And I wonder, are you just making that up as you go along as good as it sounds? Or is that in the law somewhere? It's in the legislative history that we cited that surrounds the enactment of these provisions. Congress wanted to reserve this $5,000 limit for more established, bona fide groups, as the language used in Buckley's opinion that upheld the six-month limit. Wanted to give to them this heightened ability to contribute in elections to reflect the fact that an established multi-candidate pack like the Tea Party Fund, the multi-candidate pack in this case, is a vastly different kind of organization than one of these fly-by-night groups that forms on the eve of an election. They wanted to make sure that heightened ability to contribute would be reserved for those real groups. Your concept that you were going to is that somehow the political parties wash out much chance of corruption? Is that sort of the concept? I know that would probably be a tough thing to say. Well, certainly the risk of corruption is not limited. There is a risk that justifies the limits that do exist. But is that basically that if it goes to the parties, they're established, and there's presumed some accountability, and giving money to them at least establishes that the way the money is spent on campaigns is somewhat controlled? Well, I would characterize it a little bit differently. So there's two things controlling here in the congressional analysis to give these heightened limits to the political parties. So again, one, it's to make sure they have sufficient funds to function, especially after Congress took away soft money. By the way, let me say, I suspect you're giving way more credit to Congress in how they put this thing together than is true. Well, the legislative history is actually very explicit on this point. Let me say this. How many members of Congress have any idea what the legislative history says? Well, it still informs them. You know what I used to do before I came to the court? What's that, Your Honor? I used to be Chief Counsel and Staff Director of the U.S. Senate Judiciary Committee. And it's always interesting to me to see what courts say about legislative history. If one member... It's amazing to me. We sit here. I know sometimes that's what we have to do. Members of Congress, they generally don't have any idea what they're voting on, much less legislative history. But we go about sort of acting as if it does. And it really shows up on something like this because it's so complicated and intricate and intertwined that it's a little bit concerning to me that in light of a constitutional challenge, we drop back to what legislative history says when... I'd be glad to say I was wrong if one member of Congress read the legislative history. I know, Your Honor, that can be true in many cases. I would submit that the McCain-Feingold legislation was fundamentally different and that Congress debated over this law for years and years and years. And it was obviously a very headline-making law. I still stand by my statement. But that's not a question to you. I didn't say that people didn't have press conferences about it. I said read the legislative history. But you said legislative history establishes what point? Well, the fact that the reason why these limits are higher and the reason why a new PAC can contribute to a political party at these elevated amounts is that Congress legitimately was looking to make sure that political parties had enough money to function after it took away half its funding when it took away soft money in 2002. And, indeed, Congress has long favored the political parties when enacting contribution limits. And the Supreme Court has repeatedly upheld contribution limits that favor political parties. But the inconsistency just looks like you're worried about corruption and you're worried about corruption on the six-month PAC, but you're not worried about it looks like, not you, the law isn't worried about corruption of those people as getting that money together, no matter who they give it to. That's the other side of the corruption. It seems to me that it doesn't address that point. You understand my question? So the corruption is that the donee won't be corrupt or won't be corruptible, correct, for the higher limits for the six-month PACs to political parties. Some value is given to the respectability of the donee, the parties. Correct. That doesn't have anything to do with the respectability of the donors. Well, it does in this instance because, you know, as far as PACs as a whole, whether it's a new PAC or an older PAC, the limits for those PACs are all elevated. No, but wait, but not for the six-month PAC inside that six-month period. It's restricted. As far as candidate contributions go. That's right. Correct. And why is that restricted? Because their particular corruption interest is very particular to candidates, not political parties. Right. But isn't also a corruption interest to the PAC itself, not to the donor, but to the donee? It's not an inherent risk of corruption with regard to any activity that PAC may engage in. It's with regard to a very specific type of activity, this circumvention scenario that we've submitted evidence to demonstrate that American Future PAC and Stop PAC themselves presented. So to illustrate, American Future PAC. I know that, but the point is, I don't understand that argument. You base the first restriction on the chance of corruption on the people involved in the six-month PAC, right? Correct. And the reason for that is because the people would be intimately tied with one particular candidate like they were in this case. When there's a donation to a political party, in contrast, that is by definition a contribution that goes to support multiple candidates, and the whole point is here we want those PACs to be multi-candidate PACs. I understand that, but it's not required under law that they be multi-candidate PACs. Well, Congress had a legitimate interest in not only trusting but promoting the idea that we would have these more established groups. There's no concern, you're telling me there's no concern about the corruption of the people putting the PACs together? The only concern is the corruption of the candidate receiving it? It's a balance of the two. Well, then, but the balance of the two suggests there is some concern about the corruption of the donees. Let me say this, the people who contribute to the PAC, right, the PAC itself. Correct. That doesn't go away if they're going to give their money to a political party. And their contributions to political parties are limited. They're not unlimited contributions. But they're elevated compared to the non-six-month PACs. That's correct, right. But that doesn't make any sense. Well, by virtue of the new PACs. By the way, maybe it should. Maybe you say it made sense to Congress and that's good enough. Well, I mean, taking a step back, I think the standard review that applies in this case actually doesn't call for this kind of level of scrutiny as to where Congress struck the balance in each instance of a contribution limit. It's the no scalpel to probe principle. Are you saying if we look at each contribution category, then we're using the scalpel? Or do we look at it as a whole? Well, so in looking at each category and doing what the appellants are asking in this case to have the government justify, you know, a $2,300 difference in contribution limits is using the scalpel to probe. Indeed, the amount at issue in Buckley when it used that quote was Buckley said, you know, it makes no difference whether it's $1,000 or $2,000. If you adjust that amount for inflation today, it's actually more than $2,300, which is the amount that the appellants are challenging in Claims 1 and Claims 2. It's the same principle. Congress is entitled to treat dissimilar groups in different ways. And to that point, the appellants in this case have provided no evidence. I don't think their argument is, maybe I'm going to hear from them, we're going to hear from them in a minute. I don't think the argument is that we wish we could give, there's a $2,300 limit. Gosh, how about negotiate and make the difference, $300. That's not their argument. As I understand, their argument is there is a distinction whether you call it scalpel, sledgehammer, whatever. That's the distinction made on an unconstitutional basis. You can't make that distinction. And there's no justification to make that distinction. As I understand them, that's their argument. It's not scalpel in the sense of going, it would be perfectly fine if it was a $2,000 difference but not $2,300. That's just a number that you call what Congress has said. But as I understand, and I may be wrong, their argument is by setting a difference, that's the constitutional violation. Well, the same thing would have necessarily been true in Buckley. Buckley nevertheless said we're not going to dive into the details to that kind of extent. I see my time. Or do I have? You're right. Okay. Thank you, Your Honor. Thank you. Morley. How did we get around Buckley? As you would have us do that, I take it. Buckley doesn't speak to this issue, Your Honor. Buckley involved a facial challenge. First of all, Buckley addressed this issue in a paragraph of its 133-page opinion. It rejected a facial challenge that was brought against all of the requirements for a multi-candidate PAC as a whole. And it said that the law unconstitutionally discriminated between multi-candidate PACs and, quote, ad hoc organizations. That is fundamentally different from the equal protection claim we're bringing here, which is two sets of groups, both of which have received contributions from 50 people, both of which have contributed to five candidates. The only distinction between them is one's been registered for more than six months. You don't see it as an ad hoc group then? Absolutely not, Your Honor, because what Buckley tells us is some limits on multi-candidate PACs are necessary, quote, to prevent individuals from evading the applicable contribution limits by labeling themselves committees. Under our as-applied challenge, an individual can't do that. Fifty people have to come together. Fifty people have to contribute, as the statute requires. They have to contribute to five or more candidates, as the statute requires. They just put themselves in the same capacity as any other PAC. It's just the formation time is different. Absolutely, Your Honor, that there's no constitutional basis for saying that because 50 people are organizing together and contributing to five or more candidates within six months of an election, that that somehow constitutes suspicious or potentially corrupt activity. If I can turn to the standing argument, two points with regard to standing. The first is the FEC tells us we should have brought this as a class action. This court's binding precedent says we shouldn't. In Sandford, S-A-N-D-F-O-R-D versus R.L. Coleman Realty Company, an African-American plaintiff was discriminated against on racial grounds in trying to rent homes. The plaintiff sued the realty company and wanted an injunction completely prohibiting the realty company from discriminating against anyone. And the argument was raised in that case, well, you didn't bring a class action. You're not entitled to that relief. This court rejected that argument. It said, quote, it was not necessary to secure a class certification in order to secure such enlarged injunctive relief, meaning relief going to all potential renters. And if I can read two sentences from this court's opinion, this is so because the settled rule is that whether plaintiff proceeds as an individual or on a class suit basis, the requested injunctive relief generally will benefit not only the claimant, but all other persons subject to the practice or rule under attack. Since the plaintiffs could receive the same injunctive relief in their individual action as they sought by the filing of their proposed class action, class certification was unnecessary in order to give the plaintiffs the injunctive relief they requested through class certification. This court adopts what's called the necessity doctrine, which is that under Rule 23b-2, if you're seeking an injunction against illegal behavior, many circuits, including the Fourth Circuit's ruling in Sanford, says it's not necessary to seek class certification, especially under 23b-2. There's no notice to putative class members. There's no opportunity to opt out. There's no need, as Your Honor suggested, to complicate the case through a class action. You can get the same effectively class-wide relief under this court's binding precedent, which it went on to cite and apply again in 1989 U.S. Applexus 22-119 footnote 3. You can get the same relief whether or not you were in a class action case. With regard to this court's holdings on standing, the Fourth Circuit has simply never addressed our argument as to whether or not there is an election law exception to the general same-party requirement. In Storer v. Brown, the U.S. Supreme Court faced a one-year waiting period that prevented former political party members from running as independent candidates. After the waiting period expired, the court still adjudicated those candidates' claim, even though the court said at footnote 8, quote, no effective relief can be provided to the candidates or voters. But, quote, since the issues were properly presented and their effects on independent candidates will persist as California statutes are applied in future elections, the court reached the merits. And applying cases such as Storer v. Brown. And let me say this. I want you to get through that quickly, if you will, because I want to ask you to respond about the discrepancy justification. Absolutely, Your Honor. So my point is, there's binding Supreme Court precedent, such as Storer, such as Moore v. Ogilvie, many of which are not class action cases, which the court talked at, which Justice Scalia and O'Connor discussed in Hanukkah v. Doe, where the Supreme Court itself has adjudicated the merits and has held it was appropriate to reach the merits of election law-related cases despite the fact that the same party requirement wasn't met because the law would be applied to other people. And so although the Fourth Circuit simply hasn't yet grappled with those cases, certainly, as far as I've found, the argument has not been raised to the Fourth Circuit. And so there's simply no Fourth Circuit holding on this issue. The FEC can't contend that it's been foreclosed. As to their justification that the election law addresses a different provision as to the amount of donations to the political parties? Well, the FEC can't achieve an interest, can't achieve Congress's purported interest in making more funds available to political parties by cutting the amount that PACs are able to contribute at that six-month period. There's no way, even assuming that that were a constitutionally sufficient rationale, and again, Citizens United, McCutcheon tells us that only combating corruption is a, I see my time has expired, may I finish? Citizens United and McCutcheon tell us that only fighting corruption is a constitutionally sufficient basis for burdening First Amendment activities. But even assuming that were a valid rationale, it is in no way furthered by slashing the amount that established PACs can contribute once they've been registered for six months. We ask that you reverse the lower court's opinion. Thank you very much. Thank you. We'll come down and recouncil and then go into our last case.
judges: William B. Traxler, Jr., Dennis W. Shedd, Elizabeth Kay Dillon